**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HENRY I. CISCO,

                              Plaintiff,

                    v.

                                                    9:17-CV-347
                                                    (LEK/DJS)

GERARD JONES, *et al.*,

                              Defendants.

APPEARANCES:                              OF COUNSEL:

HENRY I. CISCO
Plaintiff, *Pro Se*
243 West Market Street
Long Beach, NY 11561

HON. LETITIA JAMES                        KEITH J. STARLIN, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

    *Pro se* Plaintiff Henry I. Cisco brought this civil rights action, pursuant to 42

U.S.C. § 1983, alleging that his constitutional rights were violated while he was in the

custody of the Department of Corrections and Community Supervision ("DOCCS") at

Cayuga Correctional Facility ("Cayuga"). *See* Dkt. No. 30, Sec. Am. Compl.  Following

review of his Second Amended Complaint, an Eighth Amendment conditions of

confinement claim against Defendants McClellan, Jones, and Allen was permitted to

proceed.  Dkt. No. 29.  Defendants have now moved for summary judgment on the basis

that (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's Eighth

Amendment claim fails as a matter of law; (3) Defendants were not sufficiently personally

involved in the facts alleged for Plaintiff to sustain his claims against them; and (4)

Defendants are entitled to qualified immunity.  Dkt. No. 50.  Plaintiff has opposed the

Motion, Dkt. No. 61, and Defendants have submitted a Reply, Dkt. No. 64.

## I.  BACKGROUND

Plaintiff was housed at Cayuga from October 14, 2014 through December 5, 2017,

when he was released from DOCCS custody.  Dkt. No. 50-2, McClellan Decl., ¶ 4; Dkt.

No. 50-9, Jones Decl., ¶ 4; Dkt. No. 50-12, Allen Decl., ¶ 4.  At the time period relevant

to this matter, Plaintiff was housed in the D-2 housing unit at Cayuga.  McClellan Decl.

at ¶ 5; Jones Decl., at ¶ 5; Allen Decl. at ¶ 5.  Plaintiff alleges that he was exposed to

Environmental Tobacco Smoke ("ETS") in the D-2 housing area when he went into the

bathroom.  Dkt. No. 50-31 at p. 1; Dkt. No. 50-32, Pl.'s Dep., pp. 13, 20-21, 39.  The

policy at Cayuga at the time relevant to this action provided that smoking tobacco indoors

was prohibited at all times, but allowed inmates to smoke outdoors.  Jones Decl. at ¶ 7,

Ex. A; McClellan Decl. at ¶ 8; Allen Decl. at ¶ 8; Pl.'s Dep. at p. 12.

In 2015, Plaintiff filed a grievance complaining that he at times experienced

second-hand smoke in the bathroom and proposing a list of "action[s] requested" to

decrease inmates' exposure.  Dkt. No. 50-31.  This grievance was the only grievance

Plaintiff filed regarding indoor smoking or second-hand smoke at Cayuga.  Pl.'s Dep. at

p. 78.  Defendant Jones became Superintendent of Cayuga on July 20, 2017.  Jones Decl.

at ¶ 1.  Defendant McClellan became Deputy Superintendent of Cayuga on September 14, 2017.  McClellan Decl. at ¶ 1.  Defendant Allen worked as a Correctional Officer in the yard outside, and beginning in September 2017 occasionally swapped shifts with another Correctional Officer whose shift was in the D-2 housing unit.  Allen Decl. at ¶ 6.  On October 3, 2017, Plaintiff sent a letter to Defendants McClellan and Jones that included the same list of "action requested" that he included in his 2015 grievance.  Jones Decl. at ¶¶ 13-14, Ex. B; McClellan Decl. at ¶¶ 14-15, Exs. C & D.  Plaintiff alleges that when Defendant Allen began working in the D-2 housing unit, a couple of months before Plaintiff was released from Cayuga, Plaintiff also showed him a copy of his 2015 grievance.  Pl.'s Dep. at pp. 49-51.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are

- 3 -

ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  DISCUSSION

### A.  Exhaustion Under the PLRA

#### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.

N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### 2. *Whether Plaintiff Exhausted*

Plaintiff only filed one grievance regarding ETS, grievance number CAY-17784-15, which he filed in 2015. In it, Plaintiff stated as the "Description of Problem":

> I am a non-smoker and at times have to experience second-hand smoke (ETS) when I use the bathroom. Before I came to this Facility, this was already documented in the Log Books about Environmental Tobacco Smoke (ETS). I do not want to acquire lung cancer or asthma. And I do not want to get coronary heart disease due to second-hand smoke or any future health related problems due to this problem that will effect [sic.] my health.

Dkt. No. 50-31 at p. 1. It then has 33 paragraphs of "action requested" which propose actions that Plaintiff desired the prison to take in order to, among other things, make

- 6 -

smoking outdoors more accessible, aid prisoners in quitting smoking, provide additional information to prisoners about smoking and its effects, and separate smokers and non-smokers in the dorms. *Id.* at pp. 2-5.

Defendants argue that this grievance was filed when Defendant Jones and McClellan were not yet employed at Cayuga, and before Defendant Allen had ever worked in the D-2 housing unit. Dkt. No. 50-13, Defs.' Mem. of Law, p. 3. They assert that the grievance does not, among other things, request that the policy banning indoor smoking be better enforced, or name any specific DOCCS personnel that were failing to properly discipline inmates who violated the policy. *Id.* at p. 4. Instead, they argue, Plaintiff's grievance simply suggested the implementation of new policies. *Id.* at p. 5.

Defendant McClellan worked as Deputy Superintendent of Administration at Cayuga beginning September 14, 2017, and before that, she never worked at or was assigned to Cayuga. McClellan Decl. at ¶ 1. Defendant Jones became Superintendent of Cayuga on July 20, 2017. Jones Decl. at ¶ 1. He had only ever previously worked in Cayuga for approximately two years beginning in 2000. *Id.* Defendant Allen has been employed as a Correctional Officer at Cayuga since 2012. Allen Decl. at ¶ 1. Defendant Allen worked in the yard outside, not indoors in any inmate housing unit, until September 2017, when he began to occasionally swap shifts with another Correctional Officer whose shift was in the D-2 housing unit; when he occasionally swapped those shifts were the only times that Defendant Allen worked in Plaintiff's housing unit during the relevant period. *Id.* at ¶ 6; Pl.'s Dep. at p. 50.

Plaintiff's 2015 grievance is insufficient to exhaust his administrative remedies. "A grievance [ ] must place defendants on notice of what, substantively is claimed in order to permit a proper investigation." *Messa v. Woods*, 2009 WL 3076120, at \*7 (N.D.N.Y. Sept. 23, 2009).  The grievance must "provide a specific description of the problem, that [is] sufficient to alert the prison to the nature of the wrong for which redress was sought, and provide sufficient notice of wrongdoing to cause them to investigate any such claim. In addition, the grievance need not explicitly discuss the misconduct . . . alleged in the complaint, so long as the claim was specifically addressed in the prison's denial of the grievance." *Hill v. Smith*, 2018 WL 2172701, at \*5 (N.D.N.Y. Apr. 19, 2018) (internal quotation marks omitted) (citing *Albritton v. Morris*, 2018 WL 1609526, at \*10-11 (S.D.N.Y. Mar. 29, 2018)); *see also Espinal v. Goord*, 558 F.3d 119, 126-28 (2d Cir. 2009).

In the present case, Plaintiff's concerns relate specifically to these Defendants' alleged failure to enforce the indoor smoking policy and to sufficiently respond to Plaintiff's complaints regarding the same. Sec. Am. Compl. at pp. 4-9; Pl.'s Dep. at p. 13. Until 2017, Defendant Allen only worked outside, where Plaintiff did not complain about inmates smoking, and Defendant McClellan and Defendant Jones both did not start working at Cayuga until 2017.  Therefore, Plaintiff's grievance about ETS generally in 2015 could not have put Defendants on notice as to Plaintiff's claim that these Defendants were not sufficiently enforcing the policy prohibiting indoor smoking.  Indeed, the grievance could not have "place[d] defendants on notice of what, substantively is claimed in order to permit a proper investigation," since at least two of these Defendants were not

present at the time Plaintiff submitted his grievance. *See Messa v. Woods*, 2009 WL 3076120, at \*7. The specific facts of this case, in which Plaintiff's claims are based on these specific Defendants' alleged inaction, and the fact that Plaintiff filed his grievance two years prior to that alleged inaction, leads the Court to conclude that Plaintiff's grievance did not exhaust his administrative remedies.

Plaintiff also mailed his Letters of a Solution to the Second-hand Smoke Problem in the D-2 Dorm bathroom and shower area to Defendant Jones and Defendant McClellan. Dkt. No. 61-1, Pl.'s Mem. of Law, p. 8. Plaintiff asserts that he also showed Defendant Allen a copy of his 2015 grievance. *Id.* at pp. 2-3. To the extent Plaintiff intends to contend that such actions satisfied the grievance procedures, informal measures such as these communications are not sufficient to exhaust pursuant to the PLRA. "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' . . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in Ross, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable

of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Here, Plaintiff does not contend that administrative remedies were unavailable to him for any reason. *See* Pl.'s Mem. of Law.

As such, the Court recommends finding that Plaintiff did not exhaust his administrative remedies, and that the failure is not excusable. The Court would therefore recommend dismissing the Second Amended Complaint on that basis. For the sake of completeness, the Court will also consider Defendants' arguments regarding the merits of Plaintiff's Eighth Amendment claim.

## B. Plaintiff's Eighth Amendment ETS Exposure Claim

Defendants contend that there is no genuine dispute of material fact as to whether the ETS posed a substantial risk of serious harm to Plaintiff, either in the form of present harm or increased risk of future harm. Defs.' Mem. of Law at p. 5. Defendants argue that Plaintiff has never been diagnosed with any medical injury or condition caused by exposure to ETS, and that his headaches, watery eyes, coughing and irritated throat, lightheadedness, and runny nose were alleviated with medication while at Cayuga and have essentially resolved since he was released from custody. *Id.* at pp. 6-7. They also assert that his increased risk of future harm is insufficient based on the limited exposure, and he has had no medical condition or illness caused by ETS exposure since his release from DOCCS custody. *Id.* at pp. 7-10. Finally, they assert that Defendants could not be responsible for any harm because they worked at Cayuga, or in the case of Defendant Allen in the D-2 unit, for only a short portion of Plaintiff's stay there. *Id.* at pp. 10-11.

In response, Plaintiff alleges that he was "constantly injured by the Second-hand Smoke from the bathroom and shower area practically every day, to every week, to every month." Pl.'s Mem. of Law at p. 3. He contends that the health risks from this exposure violated contemporary standards of decency. *Id.* at p. 7. He alleges that numerous nurses recognized that his injuries were from second-hand smoke, and that he is still experiencing health-related symptoms form the second-hand smoke. *Id.* at p. 4. He contends that he made Defendants aware of the ETS problem, and that they were deliberately indifferent in resolving the problem. *Id.* at p. 2. Plaintiff alleges that Defendant Allen refused to direct and discipline inmates to comply with the no smoking policy, and even warned inmates when authorities were making rounds; he also alleges that he showed Defendant Allen his grievance, and that Defendant Allen informed Plaintiff that he "doesn't really care about" the smoking issue and that Plaintiff's solution was "too much work." *Id.* at pp. 3-4 & 7. Plaintiff also sent his proposed solution to Defendants McClellan and Jones on October 3, 2017. *Id.* at p. 8. He alleges they failed to enforce the policies, and should have outright banned the sale of tobacco products at Cayuga because otherwise prisoners would continue to use them indoors. *Id.* at pp. 8-9. Plaintiff asserts that the indoor smoking policy at Cayuga evidences the danger that ETS poses and Defendants' knowledge of that danger. *Id.* at p. 11.

### *1. Standard*

"Eighth Amendment jurisprudence on the subject of prison ETS claims distinguishes between claims of present harm from ETS exposure (such as where exposure to ETS creates or exacerbates a medical condition) and claims that ETS

exposure will cause the prisoner harm in the future."  *Gillespie v. Taylor*, 2009 WL

3165543, at \*5 (N.D.N.Y. Sept. 28, 2009).

> ETS claims of present harm are analyzed, like other Eighth Amendment
> medical claims, pursuant to the framework set out in *Estelle v. Gamble,* 429
> U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976).  Under that framework, to
> prevail on an Eighth Amendment claim of inadequate medical care, a
> plaintiff must show two things: (1) that the plaintiff had a *sufficiently
> serious* medical need; and (2) that the defendant was *deliberately indifferent*
> to that serious medical need.  *Estelle v. Gamble,* 429 U.S. at 104; *Chance
> v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).

*Id.*  The first prong is an objective standard and considers whether the medical condition

is "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson

v. Seiter*, 501 U.S. 294, 297 (1991)).  The Second Circuit has stated that a medical need

is serious if it presents "a condition of urgency that may result in degeneration or extreme

pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks

and citation omitted). Among the relevant factors to consider are "[t]he existence of an

injury that a reasonable doctor or patient would find important and worthy of comment

or treatment; the presence of a medical condition that significantly affects an individual's

daily activities; or the existence of chronic and substantial pain."  *Id.* (quoting *McGuckin

v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  To satisfy the subjective prong

Plaintiff must establish that Defendants knew of and disregarded an excessive risk to his

health.  *Crosby v. O'Connell*, 2010 WL 3909714, at \*2 (N.D.N.Y. Sept. 30, 2010).

"In order to succeed on an ETS claim alleging future harm, a plaintiff must

establish both an objective and a subjective element. To establish the objective element,

the plaintiff must show that he was exposed to unreasonably high levels of ETS."

*Gillespie v. Taylor*, 2009 WL 3165543 at \*6 (internal citation omitted) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Gill v. Smith*, 283 F.Supp.2d 763, 766 (N.D.N.Y. 2003)).

> [I]n contrast to a claim of present harm from ETS, the focus in a claim of future harm from ETS is *not* on whether the plaintiff has sought treatment or complained of ailments associated with exposure to ETS. Rather, the objective element for a claim regarding future harm from ETS focuses on whether levels of ETS in the facility were so high that they violated contemporary standards of decency.

*Id.* at \*7 (internal citation omitted) (citing *Helling v. McKinney*, 509 U.S. at 36; *McPherson v. Coombe*, 29 F.Supp.2d 141, 145-46 (W.D.N.Y. 1998)).

"To establish the subjective element, a plaintiff must show that the defendants were deliberately indifferent to the plaintiff's medical needs or safety in exposing him to ETS, determined in light of the prison authorities' current attitudes and conduct." *Id.* at \*8 n. 23 (internal quotations marks omitted) (quoting *Gill v. Smith*, 283 F. Supp. 2d at 767 and *Helling v. McKinney*, 509 U.S. at 36). While "[t]he mere fact that a prison has a no-smoking policy that is not fully enforced is insufficient to establish deliberate indifference, . . . the fact that a facility has instituted a smoking ban can also be seen as an admission that prison officials are aware that ETS poses a health risk." *Id.* (citing *Davidson v. Coughlin*, 920 F.Supp. 305, 309 n. 1 (N.D.N.Y. 1996); *Warren v. Keane*, 937 F.Supp. 301, 306 (S.D.N.Y. 1996); *Gill v. Smith*, 283 F.Supp.2d at 769). "Officials' failure to respond to a prisoner's complaints about ETS can also help to establish the subjective element." *Id.* (citing *Gill v. Smith*, 283 F.Supp.2d at 769).

### *2. Objective Element*

#### *a. Present Harm*

Plaintiff alleges that he developed headaches, watery eyes, coughing and irritated throat, lightheadedness, and runny nose symptoms as a result of ETS exposure at Cayuga. Pl.'s Dep. at pp. 84-86. Plaintiff went to medical approximately monthly to get Tylenol or Ibuprofen for his head, eye drops for his eyes, saline spray for his runny nose, and lozenges for his cough and scratchy throat. *Id.* at pp. 86-88; Dkt. No. 61-2. He testified that he used the painkiller, saline spray, and eye drops basically every day, and the lozenges two to five times per week; Plaintiff stated that the treatment was effective in alleviating his symptoms. *Id.* at pp. 93-97; Dkt. No. 61-3 at p. 65. Plaintiff has not experienced any other injuries or conditions due to exposure to second-hand smoke. *Id.* at pp. 81 & 101. Since being released from custody, Plaintiff has had headaches "off and on," and coughs at times;[1] he does not experience watery or irritated eyes, runny nose, or lightheadedness. *Id.* at pp. 93-95 98-100. He has not had any medical treatment related to exposure to ETS since being released from DOCCS custody, and he does not know of any injury or illness that he has developed due to ETS exposure. *Id.* at pp. 126-28.[2]

---

[1] Plaintiff testified in his deposition that since release, he gets headaches two to four times per month, which last for one to two hours. Pl.'s Dep. at p. 95. He also testified that he has coughing bouts two to four times per month, and that during these bouts he coughs a couple of times to clear his throat. *Id.* at p. 94. In his errata sheet, Plaintiff corrected those answers to state that he gets headaches four to five times per month, and that they last several hours or all day, and that he coughs every other day. Dkt. No. 61-3 at p. 65; *see also* Dkt. No. 58. The Court considers both Plaintiff's amended testimony and his original answers at his deposition. *Usiak v. New York Tank Barge Co.*, 299 F.2d 808 (2d Cir. 1962); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997).

[2] In his errata sheet, Plaintiff did not change his answers providing that he has not received any care for injuries or medical conditions he claims are related to ETS exposure. *See* Dkt. No. 61-3. He did change a later answer to provide that he has received advice related to second-hank smoke. *Id.* at p. 67.

These allegations do not constitute a sufficiently serious medical need for Eighth Amendment purposes. *Grayson v. Courtney*, 2018 WL 6933296, at \*10-12 (N.D.N.Y. Dec. 3, 2018) (collecting cases) (finding the plaintiff's allegations that "he suffered from aggravated symptoms of gagging, non-stop coughing, a racing heart, and dizziness when exposed to ETS" "do not rise to the level of a serious medical need sufficient to support an Eighth Amendment claim for present harm due to ETS."); *Johnson v. Fischer*, 2015 WL 670429, at \*9 (N.D.N.Y. Feb. 17, 2015) ("Medical conditions such as breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy are 'relatively minor' and are not sufficiently severe to establish the objective prong of an Eighth Amendment claim for present exposure to ETS").

### b. Future Harm

Plaintiff has also failed to show he was exposed to unreasonably high levels of ETS for purposes of a future harm claim. It is significant that Plaintiff only alleges exposure in the bathroom, and does not allege that he suffered ETS exposure anywhere else in the prison. "[C]ourts in this Circuit have generally found ETS exposure to be insufficiently high when the exposure was limited to common areas outside of immediate living quarters, such as recreational areas where a plaintiff is only temporarily and/or voluntarily exposed to ETS." *Eldridge v. Williams*, 2013 WL 4005499, at \*8 (S.D.N.Y. July 30, 2013) (finding ETS exposure that occurred primarily in the shower area and in Plaintiffs' cells through the ventilation system, and to a lesser extent, through the spaces around the cell doors, to be insufficient to meet the objective prong) (citing *Zaire v. Artuz*, 2003 WL 230868, at \*5 (S.D.N.Y. Feb. 3, 2003)); *see also Gillespie v. Taylor*, 2009 WL

- 15 -

3165543, at \*7-8 ("Here, even when viewed in the light most favorable to Plaintiff, the evidence does not raise a genuine issue of material fact that the levels of ETS to which Plaintiff was exposed violated contemporary standards of decency. Although Plaintiff has stated that the bathroom was quite smoky, he has not alleged or produced evidence that he was exposed to ETS in his sleeping quarters, his prison job, or in any of the other common areas of the facility. Even if he encountered second hand smoke each and every time that he used the restroom (which he does not allege), his ETS exposure would be far less than the exposure discussed in" cases surviving summary judgment on future harm).

### *3. Subjective Element*

Even if Plaintiff had raised a genuine issue of material fact as to the objective prong, he cannot establish the subjective prong. "Nonmedical personnel . . . may exhibit deliberate indifference by deliberately defying the express instructions of a prisoner's doctors or deliberately interfering with medically prescribed treatment solely for the purpose of causing an inmate unnecessary pain." *Gillespie v. Taylor*, 2009 WL 3165543, at \*6 (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)). Plaintiff does not allege that he ever advised Defendants of any medical problems he had related to ETS, or that Defendants had any involvement in or knowledge of any aspect of his medical treatment. *See Grayson v. Courtney*, 2018 WL 6933296, at \*11.

Plaintiff cannot demonstrate that Defendants were deliberately indifferent to the danger caused by ETS. The evidence demonstrates that Plaintiff only substantively raised ETS with Defendants one time each, and Defendants took action to ensure inmates did not smoke indoors. To show deliberate indifference, Plaintiff "must show that the

defendants knew of the health dangers and yet refused to remedy the situation." *LaBounty v. Coughlin*, 137 F.3d 68, 72-73 (2d Cir. 1998).

Defendant McClellan asserts that while at Cayuga, she made rounds through the facility every day at work, and made rounds in the D block housing unit at least once a week. McClellan Decl. at ¶ 13. During those rounds, she never noticed any evidence of smoking indoors. *Id.* Defendant Jones made rounds through the facility every day, including rounds through the D block at least once a week. Jones Decl. at ¶ 12. During those rounds, he detected signs of indoor smoking on about four occasions, after which Defendant Jones had a security supervisor remove privileges from the housing unit in question; each of these incidents occurred after Plaintiff was released from prison. *Id.* At all times relevant to this action DOCCS Sergeants, Lieutenants, Captains, Deputy Superintendents and the Cayuga Superintendent made regular rounds throughout the facility, and the Correctional Officers assigned to the housing units did not have advance notice of those rounds. Allen Decl. at ¶ 11. Defendant Jones and other security staff at Cayuga instruct DOCCS staff to issue misbehavior reports to inmates if they catch them smoking indoors or if an inmate is caught possessing tobacco products, lighters, or matches in a bathroom or shower area, or if they discover evidence of indoor smoking. Jones Decl. at ¶ 9; McClellan Decl. at ¶ 10; Allen Decl. at ¶ 10.

Defendant Allen stated in his declaration that he made every effort to enforce DOCCS and Cayuga smoking policies and to apprehend and discipline violators. Allen Decl. at ¶ 19. He describes that per instructions from his supervisors, he prepares misbehavior reports, issues warnings and restricts privileges if he finds inmates in

- 17 -

possession of tobacco products, lighters, or matches in the inmate bathroom or shower area, or finds evidence of smoking violations. Allen Decl. at ¶ 19.

In addition, at all times relevant to this action, there were signs in each housing unit at Cayuga, and posted outside of the bathrooms, reminding inmates of the polices regarding smoking and tobacco products. Jones Decl. at ¶ 8; McClellan Decl. at ¶ 9; Allen Decl. at ¶ 9; Pl.'s Dep. at pp. 12, 44-46, & 102-103. At all times relevant to this action, inmates at Cayuga were permitted to smoke outdoors, and they had numerous opportunities to smoke outdoors every day. Jones Decl. at ¶ 7, Ex. A; McClellan Decl. at ¶ 11; Allen Decl. at ¶¶ 12-17; Pl.'s Dep. at pp. 36-39.

Defendants Jones and McClellan spoke to the Cayuga medical staff each week regarding current issues, and were never informed of any problems regarding second-hand smoke. Jones Decl. at ¶ 19; McClellan Decl. at ¶ 28. Defendant Jones and Defendant McClellan did not receive any complaints regarding second-hand smoke in the units of Cayuga, including verbal complaints while performing their rounds, aside from Plaintiff's October 2017 letter and the present action. Jones Decl. at ¶¶ 12 & 17; McClellan Decl. at ¶¶ 13 & 26. Upon receiving Plaintiff's letter, Defendant Jones routed it to Defendant McClellan for review and response, and she responded to the letter on October 17, 2017; aside from Plaintiff allegedly verbally asking Defendant Jones if he would be responding to the letter, Plaintiff did not further contact staff regarding this, and he was released from Cayuga seven days later. Jones Decl. at ¶¶ 20-21; McClellan Decl. at ¶¶ 14 & 29, Ex. F; Pl.'s Dep. at pp. 59 & 76. Aside from the single time Plaintiff

showed Defendant Allen his grievance from 2015, Plaintiff said nothing else to him about indoor smoking or ETS.  Pl.'s Dep. at pp. 53-54.

"While evidence that a particular correction officer ignored numerous, actionable complaints from inmates about ETS may indicate deliberate indifference, a single complaint would generally not, particularly if it is not supported by other evidence." *Grayson v. Courtney*, 2018 WL 6933296, at \*12; *see also Klein v. Fischer*, 2015 WL 5174031, at \*27 (N.D.N.Y. Sept. 2, 2015).  Here, the evidence demonstrates that Plaintiff only complained to Defendants once each regarding ETS, and that measures were taken to minimize ETS exposure indoors.  As such, there is not a genuine question of material fact as to whether Defendants knew of and disregarded an excessive risk to Plaintiff's health.

The Court therefore recommends finding that Plaintiff's Eighth Amendment claim fails as a matter of law.[3]

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 50) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

---

[3] Defendants also argue that Defendants should be dismissed for lack of personal involvement, and because they are entitled to qualified immunity.  Defs.' Mem. of Law at pp. 22-25.  The Court need not reach these issues, however, because the matter should be dismissed both because Plaintiff failed to exhaust his administrative remedies and because his Eighth Amendment claim fails on the merits.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:    February 11, 2020
          Albany, NY

 

Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).